UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONNA PALMER,

            Plaintiff,

    v.

BAINBRIDGE DISPOSAL, INC.,

            Defendant.

No. C08-5067 KLS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

    This matter comes before the Court on the Defendant's Motion for Summary Judgment (Dkt. #14 and 15). The Plaintiff filed her Response (Dkt. #16, 17 and 18). The Defendant filed its Reply (Dkt. #19) and the Plaintiff filed a Supplemental Memorandum (Dkt. #20). This case is before the undersigned based on the consent of the parties.

    The issue before this court is whether an oral promise to pay an employee just the same as if she is working, should she decide to leave or retire, is an "employee pension benefit **plan**" for as defined under ERISA, 29 U.S.C. § 1002(2)(A).

**PROCEDURAL BACKGROUND AND CLAIMS**

    This case was initially filed in Kitsap County Superior Court and subsequently removed to federal court based on jurisdiction pursuant to ERISA. The first two causes of action allege ERISA violations whereas the third through fifth causes of action allege violations of state law. The first cause of action is

based on the allegation that the Defendant failed to pay retirement pay pursuant to an employee pension benefit plan as defined by ERISA. The second cause of action alleges entitlement to attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

## FACTUAL BACKGROUND

The defendant corporation, Bainbridge Disposal, Inc., was founded many years ago by Don Palmer. The plaintiff, Donna Palmer, and Don Palmer were married in 1964 and divorced in 1985. Pursuant to the terms of the divorce, Donna Palmer could continue as an at-will employee with Bainbridge Disposal, Inc. The parties agree that Donna Palmer was never a corporate officer nor was she ever a key or vital employee of the corporation.

According to Donna Palmer, Don made an oral promise to her in 1998 that if "you ever feel you want to leave or retire, feel free to and we will pay you just the same as if you're working." (Dep. of Donna Palmer, p. 16, l. 17-21). Donna Palmer described this conversation as "very short and sweet." (*Id.* at p. 18, l. 17). In her deposition, the plaintiff admitted that Mr. Palmer did not characterize this payment as a pension plan (*Id.* at p. 44, l. 12-13) nor did he place any time limitations on the promised payments. (*Id.* at p. 44, l. 17-18). She further testified that she interpreted his statement to mean a pension. (*Id.* at p. 11, l. 14).[1] No one else was present when this promise was made and it was never reduced to writing.

Donna Palmer continued working as a full time employee of the corporation until the spring of 1999 when she and Don Palmer had a disagreement. Donna Palmer asserts that she retired after that dispute and that she continued receiving checks, in their usual amount, until July 2007. She received some raises over time "when they were called for" and she characterized the checks as "regular working check[s]." (*Id.* at p. 51, l. 23-25). The parties dispute whether Donna Palmer continued to perform some type of work for the corporation after the spring of 1999. For purposes of this summary judgment motion, however, the Court assumes that Donna Palmer performed no meaningful work-related duties for the

---

[1] The Court notes that Donna Palmer, in her Declaration (Dkt. #17), states that Don Palmer promised her that she would receive "retirement pay in the same amount as I was received [sic] for working." However, in her deposition testimony the Plaintiff quoted Don Palmer's statement, which she admits did not use the word "pension." The Court therefore understands Donna Palmer's Declaration as a statement of her understanding of what was told to her rather than a specific statement of what was actually said by Don Palmer.

Order Granting Defendant's
Motion for Summary Judgment
Page - 2

corporation any time after she asserts that she "retired."

The records provided the Court include the Plaintiff's W-2 forms provided by the Defendant corporation. (*see* Dkt. #15-10, Exhibit E). The W-2's show taxable income as follows: 1998 - $39,022.84; 1999 - $40,241.73; 2000 - $39,221.98; 2001 - $39,313.24; 2002 - $39,219.89; 2003 - $39,219.90; 2004 - $40,806.34; 2005 - $41,922.34; 2006 - $41,922.34; and 2007 - $18,849.00. These figures document an increase in income in 1999 of $1,218.89 and then a decrease in income in 2000 of $1,019.75. Her income remained fairly stable over the next three years until 2004 when her income was increased $1,586.44. She received another increase in 2005 in the sum of $1,116. Her income remained the same in 2006. These figures all correspond with the amounts reported in Plaintiff's income tax returns in which the income is categorized as "wages, salaries, tips." (Dkt. #15-12, Exh. G). Social security taxes were regularly deducted from her checks and the defendant corporation paid the employer's required social security contribution. At no time did the corporation issue any 1099 forms showing receipt of pension income.

In March 2004, Donna Palmer purchased a car and submitted financing documents in which she stated that she was employed by Bainbridge Disposal, had been working there for 38 years and that she earned $4000 gross monthly "Salary or Wages." (Dkt. #15-8). While these documents contradict Donna Palmer's testimony that she retired in 1999, of greater significance is the fact that she treated this income, as wages and not as pension, just as the corporate defendant treated the income as wages and not as pension.

Family trouble started shortly after Don Palmer died in April 2006. He left his businesses to his daughter Heather and excluded his daughter Heidi. This exclusion led to a will challenge by Heidi. In addition, Donna Palmer filed a civil suit regarding a checking account that was in both Donna Palmer's and Don Palmer's name. This, then, is the third law suit between family members.

Both before and after she retired, Donna Palmer received paychecks every two weeks drawn on a Bainbridge Disposal account. The checks were issued on a regular basis both while Don Palmer was alive and after he died. However, in early summer 2007, Donna Palmer received her check in its usual amount but rather than being drawn on the defendant's account it was drawn on the account of Bainbridge Septic, a company described by the defendant as a sister company. The issuance of this check - from a

1 different company - led to a confrontation between Donna Palmer and her daughter in July 2007. Shortly
2 after that confrontation, the checks were no longer issued to the plaintiff by either the defendant or by
3 Bainbridge Septic.

4 It is undisputed that while there were other employees in Bainbridge Disposal, in addition to Don
5 Palmer and Donna Palmer, there was never a retirement plan in effect for any employee or for Don
6 Palmer, the owner of the corporation.

7 It is also undisputed that there is a complete absence of any writings relating in anyway to the
8 pension plan being claimed by the plaintiff. The alleged "promise" was never reduced to writing. The
9 corporation did, however, continue to pay the plaintiff her salary after she left, continued to withhold
10 social security from her paychecks, continued to make its contribution on behalf of the plaintiff as though
11 she were an employee, and gave her raises and well as reductions in pay. The basis or reasons for the
12 raises and reductions is unknown. It appears that not only the corporation but also the plaintiff treated her
13 checks as "paychecks" - as that was the term used quite often by the plaintiff in her deposition.

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56 ( c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp., v. Catrett,* 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita elec. Indus. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Service In. V. Pacific Electrical Contractors Association,* 809 F.2d 626, 630 (9th cir. 1987).

## DEAD MAN STATUTE and STATUTE OF FRAUDS

For purposes of the Court's initial analysis, the defense raised by the Defendant regarding application of the Dead Man Statute and the Statute of Frauds is not applicable. Those are state law issues and do not come into play with regard to the Court's determination as to whether there was an ERISA welfare benefits pension plan created by Don Palmer's promise.

## APPLICATION OF ERISA

Jurisdiction in federal court is based solely on ERISA. The existence of an ERISA-governed plan is an essential precursor to federal jurisdiction. *Cvelbar v. CBI Illinois Incorporated,* 106 F.3d 1368, 1373 (7th Cir. 1997). The first issue then that this court must address is whether the promise made by Don Palmer created an "employee pension benefit plan" pursuant to ERISA. If it did not, then this Court does not have jurisdiction over the Plaintiff's claims. Based on the Court's analysis of the undisputed material facts, this Court concludes that Don Palmer's promise did not create an "employee pension benefit plan" pursuant to ERISA and further that the remaining state claims should be remanded back to Kitsap County for resolution.

"ERISA was passed by Congress in 1974 to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." *Massachusetts v. Morash,* 490 U.S. 107, 112, 109 S. Ct. 16668, 104 L.Ed.2d 98 (1989).

An "'employee pension benefit plan' and 'pension plan' mean any plan, fund, or program ... established or maintained by an employer ... to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program ... provides retirement income to employees." 29 U.S.C. § 1002(2)(A).

The first element of an employee pension benefit plan is the existence of a "plan, fund or program" and the second element is that the plan be "established or maintained by an employer." *Golden Gate Restaurant Association v. City and County of San Francisco,* 546 F.3d 639, 649, 653 (9th Cir. 2008).

In addition, the Supreme Court has emphasized that ERISA "is concerned with 'benefit plans,' rather than simply 'benefits,' because '[o]nly 'plans' involve administrative activity potentially subject to employer abuse." *Id.* at p. 649 *citing to Fort Halifax Packing Co.* v. Coyne, 482 U.S. 1, 16, 107 S. Ct. 2211, 96 L.Ed.2d 1 (1987).

> Not so well defined are the first two prerequisites: 'plan, fund, or program' and 'established or maintained.' Commentators and courts define 'plan, fund, or program' by synonym- arrangement, scheme, unitary scheme, program of action, method of putting into effect an intention or proposal, design - but do not specify the prerequisites of a 'plan, fund, or program.' At a minimum, however, 'a plan, fund, or program' under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits."

*Donovan v. Dillingham,* 688 F.2d 1367, 1372 (11th Cir. 1982).[2]

Recently the 9th Circuit, in *Golden Gate Restaurant Association, supra,* addressed the application of the *Donovan* factors and noted that satisfying the *Donovan* criteria "was a necessary but not sufficient condition for the creation of an ERISA plan." *Golden Gate* at p. 652, *citing to Curtis v. Nev. Bonding Corp.,* 53 F.3d 1023, 1028 (9th Cir. 1995). The Court went on to note its agreement with the Seventh Circuit in *Sandstrom v. Cultor Food Science, In.,* 214 F.3d 795, 797 (7th Cir. 2000):

> It is not clear that the approach taken in [Donovan] is compatible with more recent decisions of the Supreme Court, which emphasize different considerations when asking whether an informal policy or arrangement is a "plan." Both *Morash* and *Ft. Halifax* evince reluctance to find that regular and predictable awards of severance or vacation payments establish a "plan," given the frequency with which these benefits are the subject of bilateral negotiations between employers and departing employees.

*Golden Gate, supra,* at p. 652.

The existence of a written instrument is not a prerequisite to ERISA coverage. *Scott v. Gulf Oil Corporation*, 754 F.2d 1499, 1503 (9th Cir. 1985). Once, however, it is determined that ERISA covers a plan, "the Act's fiduciary and reporting procedures do require the plan to be established pursuant to a written instrument [citations omitted], but clearly these are only the responsibilities of administrators and fiduciaries of plans covered by ERISA and are not prerequisites to coverage under the Act. [citations omitted]." *Id.* at p. 1503-1504.

"In the determination of whether an ERISA plan exists, arrangements that involve a single employee quite understandably have been met with a particularly careful scrutiny." *Cvelbar v. CBI Illinois Incorporated,* 106 F.3d 1368, 1375 (7th Cir. 1997). However, an ERISA plan may exist that

---

[2] "Every circuit has adopted the *Donovan* approach for determining whether an ERISA plan has been created. *See Grimo v. Blue Cross/Blue Shield,* 34 F.3d 148, 151 (2nd Cir. 1994); *Kenney v. Roland Parson Contracting Corp.,* 28 F.3d 1254, 1257-58 (D.C. Cir. 1994)(collecting cases from the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth and Tenth Circuits)." *Cvelbar,* supra, at p. 1378, fn. 14.

covers a single employee and such has been recognized by the Department of Labor. *Id.* at p. 1376.

> In determining whether an ERISA plan exists, '[t]he pivotal inquiry is whether the plan requires an establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such a scheme; rather an employer's need to create an administrative system may arise where the employer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria. *Sherrod v. General Motors Corp.,* 33 F.3d 638 (6th Cir. 1994).

*Swinney v. General Motors Corporation,* 46 F.3d 512, 517 (6th Cir. 1995). "The hallmark of an ERISA benefit plan is that it requires 'an ongoing administrative program to meet the employer's obligation." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S. Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

The Ninth Circuit is in agreement with *Donovan* "that a mere allegation that an employer or employee organization ultimately decided to provide an employee welfare benefit is not enough to invoke ERISA's coverage" as such an allegation fails to show the "establishment" of a plan. Something more is required. *Scott,* supra, at p. 1504.

"Acts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision has become reality - e.g., financing or arranging to finance, or fund the intended benefits, establishing a procedure for disbursing benefits, assuring employees that the plan or program exists - but it is the reality of the plan, fund or program and not the decision to extend certain benefits that is determinative." *Donovan*, supra, at p. 1373.

DISCUSSION

This Court has not been directed to any similar case which was so totally lacking in documentation. There was nothing whatsoever in writing between the parties. In fact, when Donna Palmer requested that the "promise" but put in writing, Don Palmer refused. However, as noted above, the lack of something in writing is not determinative of the issue.

What is of significance in this case is an analysis of the surrounding facts and circumstances as they relate to the "promise." The Court notes that the defendant corporation made no changes in any of its policies, procedures or practices in light of the asserted promise by Don Palmer. In fact, it appears that the practice followed by the parties did not change one iota during the entire time Donna Palmer received checks from the corporate defendant. The checks provided the Plaintiff after 1999 were drawn on the

Order Granting Defendant's
Motion for Summary Judgment
Page - 7

same fund which was utilized to pay her before 1999 with the exception of a few checks in 2007 which were drawn on another corporate entity. While there were some changes made in the amount of the checks, there is nothing presented to this court which explains why those changes were made. Donna Palmer testified that there were increases in her checks "when they were called for." That sounds more like a raise than any type of regularly scheduled, planned change in a pension payment. There just is nothing before the court to show why there was any increase or, for that matter, decrease in the money paid the Plaintiff by the Defendant. There is nothing before the Court to show that the employer did anything to create a plan as opposed to make a promise of benefits.

In addition, there is nothing before this Court which would qualify, in any fashion, as an administrative scheme nor is there anything before the Court which would infer the need for the type of administrative scheme required to fall under ERISA. All that has been presented is that over the course of ten years Donna Palmer's checks increased in amount three times, decreased in amount once and for the balance was relatively stable. Social security taxes were deducted from the checks which were reported by the plaintiff as wages on her income tax returns. "We have emphasized that an employer's administrative duties must involve the application of more than a modicum of discretion in order for those administrative duties to amount to an ERISA plan. It is within the exercise of that discretion that an employer has the opportunity to engage in the mismanagement of funds and other abuses with which Congress was concerned when it enacted ERISA." *Golden Gate Restaurant Association, supra,* at p. 650.

The Court can only conclude that there is a complete lack of evidence to support Plaintiff's position that Don Palmer's "promise" created an "employee pension benefit **plan**" pursuant to ERISA.

There is also a complete lack of evidence to show that the employer defendant established or maintained the alleged pension benefit plan. The employer made no changes in its practices or policies regarding payment to Donna Palmer from before the "promise" by Don Palmer to after the "promise." The defendant continued to issue checks in the same fashion, treated them as paychecks, reported them as paychecks and were considered by the Plaintiff to be paychecks as well (see her application for financing, her income tax returns, as well as references in her deposition to receipt of her paychecks).

While there may have been a "promise" of benefits, there is no evidence before this Court to support the existence or establishment of an "employee pension benefit **plan**" which is governed by

ERISA. The Defendant's Motion for Summary Judgment (Dkt. #14) is **GRANTED** insofar as the Court finds that there is no "employee pension benefit **plan**" pursuant to ERISA. Because there is no employee pension benefit plan governed by ERISA, the plaintiff's remaining claims do not present a federal question. This case is remanded back to State Court for its determination of the remaining issues under Washington State law.

DATED this 9TH day of February, 2009.

*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge